J-S22032-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ANDREW WAYNE LOCHETTO | : | |
| | : | |
| Appellant | : | No. 3046 EDA 2025 |

Appeal from the Judgment of Sentence Entered October 24, 2025
In the Court of Common Pleas of Montgomery County Criminal Division
at No(s):  CP-46-CR-0005520-2024

BEFORE:  PANELLA, P.J.E., LANE, J., and BENDER, P.J.E.

MEMORANDUM BY BENDER, P.J.E.:                **FILED AUGUST 13, 2026**

Andrew Wayne Lochetto (Appellant) brings this appeal from the judgment of sentence entered following his convictions for involuntary deviate sexual intercourse victim less than 16, indecent assault victim less than 13, and endangering the welfare of a child.[1]  We affirm.

The trial court set forth the following history of this case:

Appellant is the biological father of ASL and AKL and between January 1, 2015, and May 20, 2022, supervised the minors both under the age of 16 in Norristown, Montgomery.  (Notes of Testimony "N.T." Stipulated Bench Trial 7/21/25, at 21-23; Stipulations of Fact, Joint Exhibit C-1/D-1).  Appellant stipulated that between those dates in Norristown, he violated a duty of care to both children on multiple occasions, he engaged in a course of conduct of having indecent contact with his daughter AKL, who was less than 13 years old, by rubbing her vagina with his bare hand on multiple occasions for the purpose of his sexual arousal,

_____

[1] 18 Pa.C.S. §§ 3123(a)(7), 3126(a)(7), and 4304(a)(1), respectively.

and in May of 2022, Appellant had anal sex/deviate sexual intercourse with ASL when she was 13 years old. (*Id*.).

Following a report made to law enforcement by one of his daughters on or about May 20, 2022, Detective Angela Anderson of the Norristown Police Department spoke with Appellant by telephone on or about June 8, 2022,[FN4] to inform him that he was under investigation regarding his daughter's allegations and to set up an interview. (N.T. Rule 600 Hearing 4/8/25, at 3, 10-11, 29; Timeline, Commonwealth Exhibit C-1). After investigating the claims of both daughters, the Commonwealth filed a criminal complaint on October 14, 2023, and charged Appellant with over one hundred (100) counts of crimes including Rape of a Child, Involuntary Deviate Sexual Intercourse with a Child, Indecent Assault, Incest of a Minor, Endangering the Welfare of Children, Corruption of Minors, and other related offenses. Although the arrest warrant became active on October 17, 2023, Appellant did not turn himself in until September 23, 2024. Counsel for Appellant told the court that Appellant had been dealing with housing insecurity at his Bail Review Hearing on September 25, 2024. (N.T. Bail Hearing 9/25/24, at 5, Commonwealth Exhibit C-2).

> [FN4] Detective Anderson left a message on Appellant's cell phone on June 8, 2022, for him to call her to set up an interview on June 15, 2022. Appellant returned the call from the same cell phone number and arrived at the station and participated in the interview on June 15, 2022. (Timeline, Commonwealth Exhibit C-1 ).

The District Court held a preliminary hearing on October 3, 2024, at which John Guynn, Esquire represented Appellant and Assistant District Attorney ("ADA") Bradley Deckel represented the Commonwealth. [The trial] court held the first pretrial conference in the case on February 4, 2025, at which time the Commonwealth requested a continuance to provide additional discovery. On March 4, 2025, Attorney Guynn filed a Motion to Dismiss pursuant to [Pa.R.Crim.P.] 600. At the pretrial conference on March 6, 2025, Attorney Guynn called the case ready for trial. At the Call of List on March 17, 2025, Attorney Guynn requested a hearing on Appellant's Motion to Dismiss before the court scheduled a trial. The Commonwealth filed its Response to Appellant's Motion to Dismiss on April 4, 2025.

Trial Court Opinion, 1/13/26, at 1-3 (footnote in original).

The trial court held a Rule 600 hearing on April 8, 2025. On April 11, 2025, the court entered an order denying the motion. Appellant agreed to a stipulated non-jury trial on July 21, 2025, at which the Commonwealth proceeded on only three counts. At the conclusion of the trial, the court convicted Appellant on all three crimes as stated above.

Prior to the sentencing hearing on October 24, 2025, Appellant waived his right to a sexually violent predator hearing after a colloquy, and the court found him to be a sexually violent predator based on the expert's opinion in the report submitted as Commonwealth Exhibit C-3. Thereafter, the trial court sentenced Appellant to a negotiated aggregated term of incarceration of six to fourteen years followed by four years of probation. This timely appeal followed. Both Appellant and the trial court have complied with Pa.R.A.P. 1925.

Appellant presents the following issue for our consideration:

> 1. Did the lower court err in denying [Appellant's] Motion to Dismiss Pursuant to Pa.R.Crim.P. 600 where the Commonwealth failed to establish its due diligence in bringing [Appellant's] case to trial?

Appellant's Brief at 3.

Appellant argues that the time between the filing of the criminal complaint and his arrest should be included in the computation of time under the speedy trial rules. *See* Appellant's Brief at 10-17. It is undisputed that Appellant's mechanical run date is October 12, 2024, which is 365 days after

the filing of the criminal complaint. It is also undisputed that Appellant was not arrested until September 23, 2024, the date which he turned himself in to police. Accordingly, 345 days elapsed prior to his arrest. Appellant asserts that this period should be included in the computation of time for purposes of Rule 600 because the Commonwealth did not exercise due diligence in attempting to apprehend him, and that the trial court erred in determining otherwise. *See id.* We disagree.

Our standard of review of a trial court's denial of a Rule 600 motion is as follows:

> In evaluating Rule 600 issues, our standard of review of a trial court's decision is whether the trial court abused its discretion. Judicial discretion requires action in conformity with law, upon facts and circumstances judicially before the court, after hearing and due consideration. An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence or the record, discretion is abused.
>
> The proper scope of review is limited to the evidence on the record of the Rule 600 evidentiary hearing, and the findings of the trial court. An appellate court must view the facts in the light most favorable to the prevailing party.
>
> Additionally, when considering the trial court's ruling, this Court is not permitted to ignore the dual purpose behind Rule 600. Rule 600 serves two equally important functions: (1) the protection of the accused's speedy trial rights, and (2) the protection of society. In determining whether an accused's right to a speedy trial has been violated, consideration must be given to society's right to effective prosecution of criminal cases, both to restrain those guilty of crime and to deter those contemplating it. However, the administrative mandate of Rule 600 was not designed to insulate the criminally accused from good faith prosecution delayed through no fault of the Commonwealth.

> So long as there has been no misconduct on the part of the Commonwealth in an effort to evade the fundamental speedy trial rights of an accused, Rule 600 must be construed in a manner consistent with society's right to punish and deter crime. In considering these matters ... courts must carefully factor into the ultimate equation not only the prerogatives of the individual accused, but the collective right of the community to vigorous law enforcement as well.

*Commonwealth v. Faison*, 297 A.3d 810, 821 (Pa. Super. 2023) (citation, brackets, and emphasis omitted).

Rule 600 provides that "[t]rial in a court case in which a written complaint is filed against the defendant shall commence within 365 days from the date on which the complaint is filed." Pa.R.Crim.P. 600(A)(2)(a). Further, "periods of delay at any stage of the proceedings caused by the Commonwealth when the Commonwealth has failed to exercise due diligence shall be included in the computation of the time within which trial must commence," while "[a]ny other periods of delay shall be excluded from the computation." Pa.R.Crim.P. 600(C)(1); *see also* Pa.R.Crim.P. 600, cmt. ("If the delay occurred as the result of circumstances beyond the Commonwealth's control and despite its due diligence, the time is excluded"). "[T]he Commonwealth is required to demonstrate that it acted with due diligence during a time period before that period can be deemed excludable." *Commonwealth v. Harth*, 252 A.3d 600, 617 (Pa. 2021) (emphasis and footnote omitted).

"Due diligence is fact-specific, to be determined case-by-case; it does not require perfect vigilance and punctilious care, but merely a showing the

- 5 -

Commonwealth has put forth a reasonable effort." ***Commonwealth v. Selenski***, 994 A.2d 1083, 1089 (Pa. 2010). Due diligence must be demonstrated by a preponderance of the evidence. ***See Commonwealth v. Wiggins***, 248 A.3d 1285, 1289 (Pa. Super. 2021). Rule 600 "expressly calls upon a trial court to assess the Commonwealth's due diligence throughout the life of a case, when faced with a claim that the Commonwealth violated a defendant's speedy trial rights." ***Harth***, 252 A.3d at 617.

In determining whether the police acted with due diligence, a balancing process must be employed where the court, using a common sense approach, examines the activities of the police and balances this against the interest of the accused in receiving a fair trial. ***Commonwealth v. Ingram***, 591 A.2d 734, 737 (Pa. Super. 1991) (citations omitted). The actions must be judged by what was done, not by what was not done. In addition, the efforts need only be reasonable; lack of due diligence should not be found simply because other options were available or, in hindsight, would have been more productive. ***Id***.

The trial court set forth the Commonwealth's activities in attempting to apprehend Appellant:

> On Tuesday, April 8, 2025, the court presided over a hearing on Appellant's Motion to Dismiss. At that hearing, Attorney Guynn challenged the pre-arrest delay. In response, the Commonwealth presented the testimony of Detective Anderson. The detective testified that as the affiant in this case, she put together a timeline based on police reports of the contacts and attempted contacts that law enforcement made leading up to Appellant turning himself in on September 23, 2024. (N.T. Rule 600 Hearing

4/8/25, at 9-42; Timeline, Commonwealth Exhibit C-1). Even though Detective Anderson was able to speak with Appellant by telephone on or about June 8, 2022, and interview him on June 15, 2022, law enforcement was unable to locate him after October 17, 2023, when the warrant became active. Detective Anderson testified that she and other members of the Norristown Police Department made multiple attempts at contacting Appellant including sending emails to Appellant, calling the mother of his children ASL and AKL ("Mother"), calling Appellant's mother, patrol canvas attempts, and in person contact with Appellant's brother. [*See* N.T., 4/8/25, at 11-18, 41-42.] Specifically, Detective Anderson testified regarding the following steps law enforcement took to bring Appellant in on his arrest warrant:

> On November 29, 2023, Detective Anderson attempted to call Appellant using the cell phone number on which she had had previous contact with him and received a message that the number was not receiving calls so she could not leave a message. [*See id*., at 12.]
>
> On November 30, 2023, Detective Anderson attempted contact with another phone number she had for Appellant, but the number was not in service. [*See id*., at 13.]
>
> On January 10, 2024, the detective called a phone number she had for Appellant's mother that was now invalid. She called Appellant's phone number again and it was now not in service. She also attempted to call other relatives, including Appellant's sister, but was unable to make contact with any of them. [*See id*., at 13-14.]
>
> On January 12, 2024, Detective Anderson put together a flyer with Appellant's photograph and information on possible addresses where he could be found based on what was already in the police database for patrol officers, even though prior checks at the addresses had been unsuccessful. The flyers stayed up in the police station roll-call so patrol officers were reminded each day to keep on the lookout for Appellant. [*See id*., at 14-15.]

In addition, Officer Vickyanont and Officer Butterworth did a directed patrol that day in the area of the Hospitality Center at 530 Church Street in Norristown based on information that Appellant had been seen there. [*See id*., at 32.]

On the same day, Patrol Officer Fritchman conducted a traffic stop of Appellant's brother and advised the brother to let Appellant know there was an active warrant out for Appellant's arrest. [*See id*., at 15.]

Beginning on January 12, 2024, there were anywhere from seven to ten Norristown police officers on the lookout for Appellant while on patrol. [*See id*., at 15-16.]

On February 28, 2024, Detective Anderson called one of Appellant's former employers to see if Appellant was still working there, and the employer advised her that Appellant had not worked there since September of 2023. [*See id*., at 16.]

On June 17, 2024, Detective Anderson called another number she had for Appellant's mother and this time was able to leave a message regarding Appellant's warrant. [*See id*.]

Also on June 17, 2024, the detective tried to make contact with Appellant again on the same phone number she had called previously and this time she was able to leave a message asking Appellant to call her back. [*See id*.] Detective Anderson also sent emails that day to two or three email addresses she had for Appellant advising him of the active arrest warrant. [*See id*., at 17.]

Additionally, the detective tried to contact the mother of Appellant's children again because Mother had told Detective Anderson that she still had contact with him from time to time regarding child support. [*See id*.]

Detective Anderson noted her surprise when Appellant finally turned himself in on September 23, 2024, because she had not received any responses from the

- 8 -

> numerous messages she had left for Appellant and his
> family members. [**See id**., at 18.]

(*Id*. at 9-18, 20; Timeline, Commonwealth's Exhibit C-1).

On cross examination, Detective Anderson agreed that she had not:

> requested a ping warrant for Appellant's cell phone number;
> specifically requested more directed patrols or canvassing of the Hospitality Center;
> contacted the Unemployment Commission to ask whether Appellant was drawing unemployment;
> notified the FBI;
> checked Montgomery County welfare offices to see if he was getting public assistance;
> checked local shelters;
> posted wanted flyers around Norristown, or
> taken out advertisements in local papers or posted on social media.

> (**Id**. at 23-40). This court found Detective Anderson's testimony very credible.

Trial Court Opinion, 1/13/26, at 3-6.

In reaching its determination that the Commonwealth established that it exercised due diligence, the trial court explained:

> This court conducted a Hearing at which ADA Deckel demonstrated the Commonwealth's efforts and due diligence in bringing this case to trial by a preponderance of the evidence. ADA Decke[l] also stated that the Commonwealth was ready for trial in this case no later than March 4, 2025, when Appellant filed a counseled Motion to Dismiss. The court concluded that the Commonwealth had put forth a reasonable effort to locate Appellant and execute the arrest warrant during the 345 days between October 14, 2023, and September 23, 2024. Adding only the excusable pre-arrest time of 345 days to the mechanical run date of October 13, 2024, results in an adjusted run date of September 23, 2025, which is well after the Stipulated Bench Trial on July 21, 2025.

Viewing the evidence in the light most favorable to the Commonwealth, this court properly exercised its discretion in concluding that the Commonwealth did not cause the pre-arrest delay and that the Commonwealth exercised due diligence in this matter. Accordingly, Appellant's claim on appeal merits no relief.

*Id*. at 14-15.

Upon review of the record, we conclude that the trial court did not abuse its discretion in finding the Commonwealth exercised due diligence. Rather, we agree with the trial court that the Commonwealth proved by a preponderance of the evidence the police activity detailed above constituted reasonable effort and due diligence in attempting to apprehend Appellant.[2] Indeed, we will not employ judicial hindsight to criticize the police's activity in

---

[2] We note that Appellant believes his case is analogous to *Commonwealth v. Collins*, 404 A.2d 1320 (Pa. Super. 1979), *Commonwealth v. Colon*, 87 A.3d 352 (Pa. Super. 2014), *Commonwealth v. Williamson*, 409 A.2d 101 (Pa. Super. 1979), and *Commonwealth v. Webb*, 420 A.2d 703 (Pa. Super. 1980). In those cases, it was determined that the police did not exercise due diligence in their efforts to apprehend the defendants. However, this case is readily distinguishable from the decisions relied upon by Appellant given the fact that, as set forth above, this matter involved more effort by the police in attempting to locate and apprehend Appellant. *See Collins*, 404 A.2d at 1322-23 (holding the police did not act with due diligence when they received information that Collins was staying with a relative in another city and waited approximately two months before requesting the police in that city assist in arresting the defendant); *Colin*, 87 A.3d at 359 (finding Commonwealth did not exercise due diligence because nothing in the record indicated any efforts were made after the filing of the criminal complaint despite police being aware of Colon's location in a state correctional facility); *Williamson*, 409 A.2d at 103 (concluding Commonwealth failed to exercise due diligence in apprehending Williamson sooner in light of the fact the police were aware of a pending arraignment in another criminal case); *Webb*, 420 A.2d at 706 (holding police did not exercise due diligence as they made only two visits to Webb's residence even though they "had no reason to believe" he was not living there).

this matter. ***See Ingram***, 591 A.2d at 737. Consequently, we agree with the trial court that the time between the filing of the criminal complaint and the time Appellant was arrested is excluded from the computation of the period for commencing Appellant's trial pursuant to Rule 600. Accordingly, the trial court did not abuse its discretion in denying Appellant's Rule 600 motion, and we affirm Appellant's judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

*Benjamin D. Kohler*

Benjamin D. Kohler, Esq.
Prothonotary

Date: 8/13/2026